USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__10/7/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHUL KYU KIM,                                        :
                                                    :          21-CV-3620 (GBD) (RWL)
                              Plaintiff,            :
                                                    :      **REPORT AND RECOMMENDATION**
              - against -                            :       **TO HON. GEORGE B. DANIELS:**
                                                    :            **DAMAGES INQUEST**
SUPERIOR CAFE CORP., et al.,                        :
                                                    :
                              Defendants.           :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Chul Kyu Kim brings this action for violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). By orders dated July 28, 2021, the Honorable George B. Daniels, U.S.D.J., granted a default judgment against Defendants and referred this matter to me to conduct an inquest on damages. For the reasons set forth below, I recommend that the Court award Plaintiff (a) $233,646.92 in damages for unpaid overtime wages; (b) $233,646.92 in liquidated damages; (c) $10,000 for violations of the wage statement and wage notice requirements; (d) prejudgment interest at the statutory rate of 9% as calculated by the Clerk of Court from the mid-point date of September 26, 2017, (e) $8,768.75 in reasonable attorneys' fees, and (d) $782 in costs.

1

**FACTS**[1]

Chul Kyu Kim ("Plaintiff") is a former employee of Superior Café Corp. and 1490 Superior Foods Corp. (collectively, the "Corporate Defendants" and together with Rasam Almontaser, the "Defendants").  (Compl. ¶ 7; FFCL at 1; Kim Decl. ¶ 5.)  The Corporate Defendants own and operate a restaurant known as Superior Café, located at 1490 Madison Avenue, where Plaintiff worked as a cook from about April 20, 2015 until June 2020.  (Compl. ¶ 53; FFCL at 1; Kim Decl. ¶¶ 4-5.)  Rasam Almontaser is an owner and/or agent of the Corporate Defendants and had the authority to hire and fire employees and determine employee compensation and work schedules.  (Compl. ¶¶ 19, 21.)

Plaintiff regularly worked over 40 hours per week with no meal breaks.  (Compl. ¶¶ 54, 65; FFCL at 1; Kim Decl. ¶ 11.)  Starting on about April 20, 2015 until about March 2020, Plaintiff worked seven days a week for a total of 58 hours each week:  ten hours each day Monday through Friday and four hours each day on the weekends.  (Compl. ¶ 55; FFCL at 1; Kim Decl. ¶ 11.)  From about March 2020 until about June 2020, Plaintiff worked six days a week for a total of 39 hours each week: seven hours each day Monday through Friday and four hours each day on Saturday.  (Compl. ¶ 56; FFCL at 1; Kim Decl. ¶ 12.)  During that time, Plaintiff was paid a weekly cash salary ranging from $1,200 to $1,500.[2]  (Compl. ¶¶ 57-61; FFCL at 1; Kim Decl. ¶ 13.)

---

[1] The facts are drawn from the Complaint ("Compl."), Dkt. 1; Plaintiff's Proposed Findings of Fact and Conclusion of Law ("FFCL"), Dkt. 38; and the Declaration of Chul Kyu Kim ("Kim Decl."), Dkt. 4.

[2] From approximately April 20, 2015 to May 20, 2015, Plaintiff was paid $1,200 per week. From approximately May 21, 2015 to May 20, 2017, Plaintiff was paid $1,300 per week. From approximately May 21, 2017 to May 20, 2019, Plaintiff was paid $1,400 per week. From approximately May 21, 2019 to June 2020, Plaintiff was paid $1,500 per week. (Compl. ¶¶ 58-61; FFCL at 1 n.2; Kim Decl. ¶ 14.)

Although he regularly worked in excess of forty hours per week, Plaintiff never received overtime compensation.   (Compl. ¶¶ 62, 70; FFCL at 2; Kim Decl. ¶ 19.) Defendants did not provide Plaintiff notice, either in English or Korean, his native language, of his rate of pay, designated pay day, or other information.  (Compl. ¶¶ 67, 69; FFCL at 2; Kim Decl. ¶ 17.)  Nor did Defendants provide Plaintiff with pay statements identifying his regular and overtime rates of pay, number of regular and overtime hours worked, minimum wage and overtime requirements, or deductions or credits taken against his wages.  (Compl. ¶¶ 67-68; FFCL at 2; Kim Decl. ¶ 17-18.)  Plaintiff was not required to keep track of his time, and to his knowledge, Defendants did not track or record his hours worked.  (Compl. ¶ 66; FFCL at 2; Kim Decl. ¶ 16.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 23, 2021.  (Dkt. 1.)  Although filed as a class or collective action, Chul Kyu Kim is the sole plaintiff.  Plaintiff served Defendant Almontaser personally and the Corporate Defendants through the New York State Secretary of State.[3]  (*See* Dkts. 17-19 (proof of service).)  None of the Defendants filed an answer or other response to the Complaint.  On June 1, 2021, Plaintiff filed applications for a certificate of default against the Defendants, which the Clerk of Court entered on June 1, 2021.  (Dkts. 23-28.)  Plaintiff then moved for default judgement on June 22,

---

[3] In addition to the Corporate Defendants and Almontaser, the Complaint also names three individuals with unidentified "Doe" surnames.  Plaintiff has not filed for default judgment against the three Doe Defendants.  Plaintiff's motion for default judgment states that Plaintiff is prepared to voluntarily dismiss the action against these defendants, but Plaintiff has not yet done so.  (Memorandum Of Law In Support Of Plaintiff Chul Kyu Kim's Motion for Default Judgement Pursuant to Fed. R. Civ. P. 55(b), Dkt. 30, at 1 n.1.)

2021.  (Dkt. 29.)  The Court granted the motion on July 28, 2021 and referred the case to the undersigned for an inquest on damages (Dkts. 35-36)

That same day, the Court entered an order directing Plaintiff to file proposed findings of fact and conclusions of law and supporting documents by September 7, 2021, establishing the legal and factual bases for an award of damages.  (Dkt. 37.)  Plaintiff filed the requisite papers and served them on the Defendants.  (Dkt. 38, 43-48.)  Pursuant to the inquest scheduling order, any response to Plaintiff's inquest submission was due by September 21, 2021; none was filed.

## LEGAL STANDARDS

When a defendant defaults, all well-pled facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  *City Of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint" (internal quotations marks omitted)); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor.") "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend."  *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff.  *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, the court "must still satisfy itself that the plaintiff has established a

sound legal basis upon which liability may be imposed." *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division Of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").

To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing. *See* Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40. An inquest into damages may be conducted on the papers, without an evidentiary hearing where there is a sufficient basis on which to make a calculation. *See Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015)*; Tamarin* 13 F.3d at 53-54; *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012). There is sufficient basis to do so here; no party has requested a hearing; and the Court has determined that one is not needed.

## LIABILITY

Accepting the well-pled allegations of Plaintiff's Complaint as true, supplemented by the declarations of record, the Court finds that Plaintiff has established Defendants' liability for unpaid overtime compensation under the FLSA and NYLL and violations of the

wage statement and wage notice requirement under the NYLL.[4]  Plaintiff has not, however, met his burden to show his entitlement to spread-of-hours pay under New York law.

### A.   Foundational Elements

The FLSA and NYLL generally require employers to pay a prescribed minimum wage as well as a premium overtime rate to employees who work more than forty hours in a workweek.[5]  29 U.S.C. § 207(a)(1); NYLL § 232; 12 N.Y.C.R.R. § 142-2.2; *see also Jacobs v. New York Foundling Hospital,* 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  An employer who fails to pay in accordance with the FLSA is "liable to the employee" for unpaid minimum wages, unpaid overtime compensation, and other damages.  29 U.S.C. § 216(b).

"Whether an individual qualifies as an employer is substantially similar under the FLSA and NYLL, and courts commonly apply FLSA case law in deciding cases under both statutes."  *Yu Ling Shen v. Xue Mei Chen*, No. 17-CV-1556, 2018 WL 2122819, at *3 (S.D.N.Y. May 8, 2018) (collecting cases); *see Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 n.1 (2d Cir. 2018) ("For purposes of this appeal, we assume, without deciding, that the tests for employer status are the same under the FLSA and the NYLL." (internal

---

[4] In addition to the claims advanced by Plaintiff, many FLSA and NYLL actions also include claims for failure to pay minimum wage.  Plaintiff makes no such claim here.

[5] The FLSA enumerates certain categories of employees who are "exempt" from the overtime and minimum wage requirements.  29 U.S.C. § 213.  Because none of those exemptions apply here, the Court does not discuss them.

quotation marks omitted)).[6]   Accordingly, courts in this circuit "have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.'" *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010).

The FLSA additionally has an interstate commerce requirement.   The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).  An enterprise is "engaged in commerce or in the production of goods for commerce" if (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Plaintiff has sufficiently alleged, and thus established, that Defendants were Plaintiff's employer under both the FLSA and the NYLL and that he worked for an enterprise having sales in excess of $500,000 and handling goods such as food and other supplies that originated outside of New York and traveled through interstate commerce daily.[7]  (Compl. ¶¶ 41-49; FFCL at 2-4; Kim Decl. ¶ 10.).

---

[6] The NYLL defines employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  NYLL § 190.  Under the FLSA's broad definition, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

[7] Plaintiff's assertions about interstate commerce are largely conclusory, as would be expected when an employer defaults and does not provide any discovery.  Given

**B.     Overtime Pay**

A successful claim for unpaid overtime requires proof that the plaintiff performed the work, with the employer's actual or constructive knowledge, and was not properly compensated.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).  Further, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.  *See Lundy v. Catholic Health System Of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Under the FLSA and NYLL, employers are required to maintain "records of employee wages, hours, tips, and other conditions and practices of employment."  *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *3 (S.D.N.Y. Aug. 20, 2014), *R. & R. adopted*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); *see* 29 U.S.C. § 211(c); 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 142–2.6.  When the employer defaults and records of wages and hours are not provided, "the employee may establish his right by relying on his recollection alone" and "[a]n affidavit setting forth the requisite details about the number of hours worked and pay received is sufficient."  *Yuquilema,* 2014 WL 4207106 at *3.  Here, Plaintiff's sworn affidavit sets forth the approximate number of hours he worked during the days of the week, demonstrating that he "regularly worked [for Defendant] in excess of forty (40) hours per week;" specifies his weekly pay, "which did not vary regardless of how many hours [he] worked;" and avers that he "never received overtime pay (at time and a half)

reasonable inferences that can be made, and the remedial nature of the FLSA and NYLL, the Court finds these allegations sufficient in this case.  *See Cabrera v. Canela*, 412 F. Supp.3d 167, 174 (E.D.N.Y. 2019) ("To decline to make reasonable inferences of interstate commerce in cases like this would frustrate the FLSA's remedial purpose and would give employers perverse incentives to default in FLSA actions, where plaintiff workers may lack specific information about their employers' distribution networks.  The Court refuses to handicap working men and women in such a manner.").

for hours worked in excess of forty (40) hours per week."  (Kim Decl. ¶¶ 11, 15, 19.)
Accordingly, Plaintiff has established his right to recover unpaid overtime wages.

### C.    Spread-Of-Hours

In addition to the minimum wage and overtime requirements, the NYLL permits an
employee to receive "spread-of-hours" pay, which is defined as "one hour's pay at the
basic minimum hourly wage rate" for any workday that lasts longer than 10 hours.  12
NYCRR § 142-2.4(a); *see also* 12 NYCRR § 146-1.6(a) ("On each day on which the
spread of hours exceeds 10, an employee shall receive one additional hour of pay at the
basic minimum hourly rate."); *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659
F.3d 234, 242 (2d Cir. 2011) (citing 12 NYCRR § 146-1.6 and its predecessor).  Plaintiff
states that Defendants did not provide him spread-of-hours for days that his shift
exceeded ten hours.  (Kim Decl. ¶ 21.)  Plaintiff further asserts that he "regularly worked
ten (10) hour days … Monday through Friday" from approximately April 20, 2015 to March
2020.  (FFCL at 7-8; Kim Decl. ¶ 11.)  The schedule of damages submitted by Plaintiff
includes spread-of-hours pay for 40 days. (Levin-Epstein Decl., Ex. A at 3.[8])  Plaintiff,
does not, however, state in his declaration, or the Complaint, that any of his work days
***exceeded*** ten hours.  Accordingly, he is not entitled to any spread-of-hours pay.  *See,*
*e.g., Asllani v. Hoti*, No. 19-CV-1106, 2020 WL 5755166, at *3 (S.D.N.Y. Mar. 31, 2020)
(plaintiff was not entitled to spread-of-hours damages where he failed to state that any of
his workdays exceeded ten hours), *R. & R. adopted*, 2020 WL 5439761 (S.D.N.Y. Sept.
10, 2020); *Yuquilema*, 2014 WL 4207106, at *5 (same).

---

[8] "Levin-Epstein Decl." refers to the Declaration of Joshua D. Levin-Epstein (Dkt. 42).

### D.     Wage Notice And Pay Statements

The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing certain basic information such as rate of pay. NYLL § 195(1)(a). Additionally, the NYLL requires employers to give employees a wage statement with each payment of wages.  NYLL § 195(3).  Each wage statement must list, *inter alia*, the dates of work covered by that payment of wages, the employer's address and phone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage.  *Id*.  Plaintiff alleges that throughout his employment with Defendants, he was never provided with either the requisite notice or wage statements required by the NYLL.  (Kim Decl. ¶¶ 17-18; FFCL at 9.)  Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently demonstrated Defendants violated the NYLL wage notice and wage statement requirements.

### DAMAGES

As Defendants' liability has been established, the Court turns to evaluating damages and other relief.  Plaintiff seeks: (a) unpaid overtime compensation totaling $233,955; (b) liquidated damages in the amount of $233,955; (c) unpaid spread-of-hours pay totaling $14,698.21; (d) $10,000 for violations of the wage statement and wage notice requirements; (e) prejudgment interest at a statutory rate of 9%; (f) attorneys' fees in the amount of $8,768.75; and (g) costs in the amount of $782.  Plaintiff has provided sufficient evidence to support each of those items apart from the unpaid spread-of-hours claims. Additionally, Plaintiff's requested amount of attorneys' fees should be reduced as explained below.

Under the FLSA, an employee bears the burden of proving that he was not properly compensated for his work. *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012). As with liability, "[w]here an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine … what damages [the plaintiff] suffered." *Marcelino v. 374 Food, Inc.*, No. 16-CV-6287, 2018 WL 1517205, at *15 (S.D.N.Y. March 27, 2018). In such instances, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S. Ct. 1187, 1192 (1946)). This burden "is not high" and may be satisfied through an employee's "estimates based on his own recollection." *Id.* at 362; *see also Hosking v. New World Mortgage, Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) ("the employee's burden in proving damages under the FLSA is minimal, particularly when the employer does not keep records").

If an employee satisfies this initial showing, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456, 136 S. Ct. 1036, 1047 (2016). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gonzalez v. Masters Health Food Service Inc.*, No. 14-CV-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Kuebel*, 643 F.3d at 362);

The NYLL applies a similar framework to unpaid compensation claims and expressly provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting NYLL § 196-a(a)), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Here, the Court does not have any payroll records before it to evaluate Plaintiff's claims; indeed, Plaintiff asserts that Defendant did not track or record his hours. (Kim Decl. ¶ 16.) Accordingly, Plaintiff may establish the extent to which he was underpaid through his own recollection of his estimated hours and wages, and, with the exception of the spread-of-hours claim, the Court accepts Plaintiff's reported hours as sufficient to establish damages.

**A.     The Applicable Damages Period**

The statute of limitations is six years for claims under the NYLL, three years for claims under the FLSA if a defendant's acts are willful, and two years if they are not. 29 U.S.C. § 255(a); NYLL § 663(3); *see also Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012). The period for which Plaintiff seeks damages begins on April 20, 2015. The Complaint was filed a little over six years later on April 23, 2021. Plaintiff alleges that the Defendants acted willfully. (Compl. ¶¶ 79,85, 88), and Defendants' willfulness can be inferred from their default. *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) ("Courts deem defendants' actions willful where they have defaulted"), *R. & R. adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016); *Santillan v. Henao*, 822 F. Supp.

2d 284, 297 (E.D.N.Y. 2011) ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness.").  Thus, Plaintiff's covered employment period is limited to any date after and including April 23, 2015 under the NYLL six-year statute of limitations and to any date after and including April 23, 2018 under the FLSA three-year statute of limitations for willful violations.

Although "plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief."  *Ni v. Bat-Yam Food Services. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).  The NYLL permits greater or equal recovery than the FLSA at all relevant times during Plaintiff's applicable employment with Defendants; accordingly, the Court will apply the NYLL for all damages calculations.  Moreover, there are no damages at issue that Plaintiff could recover only under the FLSA and not the NYLL.  As a result, the damages period for all damages at issue is the six-year period preceding April 23, 2021.

**B.**     **Overtime Pay**

New York requires employers to pay employees "a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 NYCRR § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare System, Inc.,* 723 F.3d 192, 200 (2d Cir.2013) (citing 12 NYCRR § 142-2.2).  Under the NYLL, the regular rate of pay is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 NYCRR § 146-3.5(b).

Plaintiff received a different fixed rate of pay for different time periods, and the number of hours he worked varied as well.  (Compl. ¶¶ 55-61.)  Accordingly, the Court determines Plaintiff's regular rate of pay and amount of unpaid wages for the four periods set forth by Plaintiff.

**Period 1 (April 20, 2015 – May 20, 2015):** Plaintiff attests that he worked 58 hours per week for this period of 4.29 weeks and was paid $1,200 weekly.  (Levin-Epstein Decl., Ex. A at 3.)  The resulting regular rate of pay ($1,200 divided by 40 hours) is $30 per hour, well above minimum wage.  The corresponding overtime rate was 1.5 times that amount, or $45 per hour.  Plaintiff worked a total of 18 overtime hours per week during this period (i.e., 58 hours worked minus the 40-hour threshold).  Multiplying those 18 hours by the overtime rate produces a weekly total of $810 unpaid overtime for the first period of Plaintiff's employment.  Taking into consideration that three days of this period are not subject to claims because of the NYLL six-year statute of limitations, the total unpaid overtime for this period is $3,124.29.[9]

**Period 2 (May 21, 2015 – May 20, 2017):** Plaintiff claims that he worked 58 hours per week for this period of 104 weeks and was paid $1,300 weekly.  (Levin-Epstein Decl., Ex. A at 3.)  The resulting regular rate of pay ($1,300 divided by 40) is $32.50 per hour. The corresponding overtime rate was 1.5 times that amount, or $48.75 per hour.  Plaintiff worked a total of 18 overtime hours per week during this period.  Multiplying those 18 hours by the overtime rate produces a weekly total of $877.50 unpaid overtime for the

---

[9] Period 1 consists of 30 days, but Plaintiff is eligible for damages for only 27 of those days.  The daily unpaid overtime total is $115.71 ($810 divided by 7), and that figure multipled by 27 is $3,124.29.

14

second period of Plaintiff's employment.   The total unpaid overtime for this period is $91,260.

**Period 3 (May 21, 2017 – May 20, 2019):** Plaintiff claims that he worked 58 hours per week for this period of 103.9 weeks and was paid $1,400 weekly but should have been paid $2,345 each week.  (Levin-Epstein Decl., Ex. A at 3.)  The resulting regular rate of pay ($1,400 divided by 40 hours) is $35 per hour.  The corresponding overtime rate would have been 1.5 times that amount, or $52.50 per hour.  According to Plaintiff, he worked a total of 18 overtime hours per week during this period.  Multiplying those 18 hours by the overtime rate produces a weekly total of $945 unpaid overtime for the third period of Plaintiff's employment.  The total unpaid overtime for this period is $98,185.50.

**Period 4 (May 21, 2019 – February 29, 2020):** Plaintiff claims that he worked 58 hours per week for this period of 40.57 weeks and was paid $1,500 weekly but should have been paid $2,512.50 each week.  (Levin-Epstein Decl., Ex. A at 3.)  The resulting regular rate of pay ($1,500 divided by 40 hours) is $37.50 per hour.  The corresponding overtime rate would have been 1.5 times that amount, or $56.25 per hour.  According to Plaintiff, he worked a total of 18 overtime hours per week during this period.  Multiplying those 18 hours by the overtime rate produces a weekly total of $1,012.50 unpaid overtime for the final period of Plaintiff's employment.  The total unpaid overtime for this period is $41,077.13.[10]

---

[10] Plaintiff worked for a fifth period from March 2020 to June 2020.  During that period, however, Kim claims to have worked only 39 hours per week.  (Kim Decl. ¶ 12.) His hours thus did not exceed the 40-hour overtime threshold, and he claims no overtime wages for that period.

Adding the four periods together yields a total of $233,646.92 in unpaid overtime wages to which Plaintiff is entitled.[11]

## C.   Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages.  Under the FLSA, any employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back pay, for 100% of the unpaid wages as liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions … of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation … and in an additional equal amount as liquidated damages.").  Liquidated damages are awarded unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary.  29 U.S.C. § 260.

The NYLL rules are similar.  *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *R. & R. adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  A plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery.  *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  However, a plaintiff is not entitled to double recovery of

---

[11] Plaintiff calculates his damages for unpaid overtime compensation as $233,955; however, this is because Plaintiff did not account for the three days for which his claims are barred by both the state and federal statute of limitations.

liquidated damages.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

There is no proof before the Court that Defendants acted in good faith.  To the contrary, the facts are indicative of willfulness, particularly given Defendants' failure to maintain records, the violations established by default, and Defendants' failure to participate in this case.  Accordingly, Plaintiff is entitled to recover liquidated damages equal to 100% of the amount owed to Plaintiff in unpaid wages.  Plaintiff therefore is entitled to liquidated damages in the amount of $233,646.92.

**D.   Spread-Of-Hours**

As discussed above, the Court has no basis to conclude that Plaintiff worked in excess of 10 hours on any day and thus no basis to award spread-of-hours damages. Even if Plaintiff had established liability for spread-of-hours, he provides no supporting facts to establish how many days and how many hours of spread-of-hours pay he incurred.  Indeed, his explanation of the hours he worked demonstrates that he did not work more than ten hours on any given day.  (*See* Kim Decl. ¶¶ 11-12.)  While his damages schedule claims 40 spread-of-hours days from April 20, 2015 until February 29, 2020, such assertion is far too general and untethered to any facts to establish damages. (Levin-Epstein Decl., Ex. A at 3.)

**E.   Wage Notices And Wage Statements**

The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay.  NYLL § 195(1)(a).  The penalty for an employer's failure to provide the requisite wage notice within ten business

days of the first day of employment is $50 for each workday that a violation occurs or continues to occur, not to exceed a total of $5,000.  NYLL § 198(1-b).

In addition to the wage notice requirement, the NYLL also requires employers to provide employees with a wage statement with each payment of wages.  NYLL § 195(3). An employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed a total of $5,000.  NYLL § 198(1-d).

Here, Defendants failed to provide Plaintiff with both the requisite wage notice and wage statements over a lengthy period easily surpassing the statutory penalty caps. Accordingly, Plaintiff is entitled to a total of $10,000.00 in statutory penalties.

## F.    Pre-Judgment Interest

Under the FLSA, awards of federal liquidated damages serve, in part, as a form of compensatory pre-judgment interest.  *See, e.g.*, *Galeana v. Lemongrass On Broadway Corp.*, 120 F. Supp.3d 306, 321 (S.D.N.Y. 2014); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp.2d 240, 261 (S.D.N.Y. 2008).   Thus, a plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).

In contrast, liquidated damages under the NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest. *Yu G. Ke,* 595 F. Supp. 2d at 262 (citing *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), ("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest … is appropriate."), *R. & R. adopted sub nom.*, *Yao Lin v. Hayashi Ya II, Inc.*, 2009 WL

18

513371 (S.D.N.Y. Feb. 27, 2009).  Accordingly, Plaintiff is eligible to recover pre-judgment interest on his state law claims at the statutory rate of 9% per annum.  *See* NY CPLR §§ 5001, 5004; *see, e.g.*, *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims); *Santillan*, 822 F. Supp. 2d at 298 (same).

"The Court has discretion to choose a reasonable date from which prejudgment interest should accrue."  *Junmin Shen v. Number One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *14 (S.D.N.Y. Nov. 26, 2018) (citing *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp.3d 285, 294-95 (S.D.N.Y. 2016)).  Where, as here, multiple periods of employment are involved with different rates of pay, courts "often choose the midpoint of the plaintiff's employment within the limitations period."  *Junmin Shen*, 2018 WL 6712771 at *14 (quoting *Gamero*, 272 F. Supp. 3d at 515 (internal quotation marks omitted)).  Here, the midpoint of Plaintiff's employment with Defendant covered by the NYLL statute of limitations is September 26, 2017.[12]

Accordingly, Plaintiff should be awarded pre-judgment interest on his unpaid wage damages (but not on liquidated damages) running from September 26, 2017 to the date of judgment at the requested statutory rate.

---

[12] Plaintiff mistakenly calculates the midpoint date as September 24, 2017 because he used as his starting point the state date of employment as April 20, 2015 rather than April 23, 2015, as required by the NYLL statute of limitations.

## G. Attorneys' Fees

Plaintiff seeks compensation for $9,550.75 in attorneys' fees. (FFCL at 12; Levin-Epstein Decl., Ex. B at 3.[13]) Based on the declaration from Plaintiff's counsel and the attached invoice and time records, that amount includes the $782 amount Plaintiff separately requests for costs. Backing out the costs as a separate category, the proper amount of requested fees for the Court to consider is $8,768.75. (Levin-Epstein Decl., Ex. B at 3.[14])

The FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198-1; *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655, 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."), *R. & R. adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014). The Second Circuit has held that "the lodestar … creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens*

---

[13] The spreadsheet of damages attached to Plaintiff's counsel's declaration incorrectly lists $164,202.74 as the amount of attorneys' fees Plaintiff seeks. (Levin-Epstein Decl., Ex. A at 2.)

[14] The "services subtotal" indicated on the invoice is $8,768.75. (Levin-Epstein Decl., Ex. B at 3.)

*Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City Of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive at a lodestar calculation, "[t]he party seeking an award of [attorneys'] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  Plaintiff has submitted such evidence here, including a declaration from counsel and copies of contemporaneous records of time expended by specific attorneys.  (Levin-Epstein Decl., Ex. B.)

**Hourly Rates:**  Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. Metropolitan Transportation Authority Of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted).   "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted). Additionally, "the range of rates that a plaintiff's counsel actually charges their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County Of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Plaintiff is represented in this action by Levin-Epstein & Associates, P.C. and seeks reimbursement of fees for the work of two attorneys from that firm: Joshua Levin-Epstein, who billed at an hourly rate of $450 for 3.5 hours, and Jason Mizrahi, who billed at an hourly rate of $325 for 22.25 hours.[15]  (Levin-Epstein Decl. ¶¶ 7-10, Ex. B at 2-3.)

The Court recommends approval of the requested rates as they are well within the reasonable range of rates for experienced attorneys performing similar work, and the rates are similar to those this Court has previously approved.  *See, e.g.*, *Shanfa Li v. Chinatown Take-Out Inc.,* No. 16-CV-7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York."), *aff'd*, 812 F. App'x 49 (2d Cir. 2020); *Bisono v. TDL Restoration, Inc.*, No. 17-CV-9431, 2019 WL 4733599, at *2 (S.D.N.Y. Sept. 27, 2019) (same); *Villar v. Prana Hospitality, Inc.*, No. 14-CV-8211, 2019 WL 1387412, at *10-11 (S.D.N.Y. Feb. 4, 2019) (approving hourly fees of $350/hour and $400/hour for two attorneys on FLSA matter), *R. & R. adopted*, 2019 WL 1382803 (S.D.N.Y. March 27, 2019).

The Court also has reviewed the qualifications of each individual for whom such rates are sought, as well as the roles played by each in this case, and finds the rates charged appropriate for attorneys of their background and experience.  (*See* Levin-Epstein Decl. ¶¶ 8-10.)  Accordingly, the Court finds the rates requested for Plaintiff's attorneys to be reasonable.

---

[15] Mr. Levin-Epstein's states that he billed an hourly rate for this matter of $450; however, he billed only $425 for his initial meeting with Plaintiff.  (Levin-Epstein Decl., Ex. B at 2.)

**Hours Worked:** To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case."  *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 873, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Gierlinger*, 160 F.3d at 876. "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

A prevailing party can recover fees for several categories of work, including failed efforts otherwise reasonably pursued.  *See, e.g., Gortat v. Capala Brothers, Inc.*, 621 F. App'x 19, 23 (2d Cir. 2015) ("there is no rule that [p]laintiffs need achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigating that claim"); *Ni*, 2016 WL 369681 at *8 (awarding attorneys' fees for hours spent on discovery, discovery-related motions, failed settlement negotiations, and summary judgment motions); *Easterly v. Tri-Star Transportation Corp.*,

No. 11-CV-6365, 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015) (approving fees for time spent, *inter alia*, preparing pleadings prior to the commencement of the action, discovery, discovery disputes, summary judgment motions, and a damages inquest).

The time records submitted reflect that Plaintiff's attorneys worked 25.75 hours. (Levin-Epstein Decl., Ex. B at 2-3.)  The Court has reviewed the records and finds the time spent to be reasonable.  The work performed is of the nature and type that would be expected for a wage-and-hour action such as this one.  The principal work performed included drafting the complaint and the motion for default judgment.  Notably, the time records do not reflect time spent on the submissions required for this inquest.  The hours spent, broken down by each individual and supported by contemporaneous documentation, were all reasonably necessary for the litigation of Plaintiff's claims.  The attorney with the highest billing rate of the two attorneys working on the matter accounts for less than four of the hours; the remaining work was performed by the attorney with a materially lower rate of $325 per hour, indicating that work was appropriately delegated.

Having determined that the fees sought are reasonable, the Court finds that Plaintiff should be awarded fees of $8,768.75.

## H. Costs

Plaintiff seeks $782 in costs and has submitted copies of receipts and invoices representing expenses incurred for filing fees and services of process fees.  (FFCL at 12; Levin-Epstein Decl., Ex. D.)  Those expenses are routinely recoverable.  *See e.g.*, *Angamarca*, 2012 WL 3578781 at *14 (approving $350 court filing fee and $600 in service of process fees for default judgment in FLSA and NYLL case); *Malletier v. Artex Creative International Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees,

shipping costs, and research fees are "typically awarded when a defendant defaults") (citing *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 369 F.3d 91, 98 (2d Cir.2004)); *Tips Exports, Inc. v. Music Mahal, Inc.,* No. 01-CV-5412, 2007 WL 962036 at *11 (E.D.N.Y. Mar. 27, 2007) (reimbursing plaintiff for process servers, postage and photocopying); *Shannon v. Fireman's Fund Insurance Co.,* 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and shipping costs).  Costs associated with copying, docket fees, and other miscellaneous fees may also be recovered pursuant to Local Civil Rule 54.1.

The Court has reviewed Plaintiff's submissions and finds the costs set forth are recoverable.  Accordingly, Plaintiff should be awarded $782 in costs.

## CONCLUSION

For the foregoing reasons, I recommend awarding Plaintiff: (a) damages totaling $467,293.84 (comprised of $233,646.92 in unpaid overtime wages and $233,646.92 in liquidated damages); (b) $10,000 for violations of the wage statement and wage notice requirements; (c) pre-judgment interest at the statutory rate of 9% to be calculated by the Clerk of Court from September 26, 2017; (d) reasonable attorneys' fees in the amount of 8,768.75; and (e) costs in the amount of $782.

## DEADLINE FOR OBJECTIONS AND APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules Of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report And Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, New York 10007, and

to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: October 7, 2021
        New York, New York

Copies transmitted this date to all counsel of record.